## UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| SOUTHEASTERN MECHANICAL SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> NORMAN BRODY, JAMES SHEROUSE, KEVIN SMITH, THERMAL ENGINEERING CONSTRUCTION SERVICES, INC. (A/K/A TEI CONSTRUCTION SERVICES, INC.), BABCOCK POWER SERVICES, INC., AND THEODORE MALISZEWSKI, <br><br> Defendants. | CIVIL ACTION FILE <br> NO. 8:08-cv-1151-T-30EAJ <br><br><br> **RESPONSE OF DEFENDANTS THERMAL ENGINEERING CONSTRUCTION SERVICES, INC., BABCOCK POWER SERVICES, INC., AND THEODORE MALISZEWSKI TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

COME NOW Defendants Thermal Engineering Construction Services, Inc., ("TEI") Babcock Power Services, Inc. ("Babcock"), and Theodore Maliszewski ("Maliszewski") (collectively, "TEI-Babcock"), and hereby respond to Plaintiff Southeastern Mechanical Services, Inc.'s ("SMS") Motion for Preliminary Injunction (the "Motion") (Doc. 12).

### INTRODUCTION

In its Motion, SMS seeks, among other relief, an injunction that would completely prohibit TEI-Babcock from contacting *any* customer of SMS, regardless of whether those customers were or are affected by the alleged wrongdoing set forth in the Amended Complaint. SMS seeks this extraordinary relief despite the fact that the individual defendants worked for TEI for a period of only two weeks, and had contact with only five customers of SMS during that period of time. The injunction sought by SMS would

encompass many customers with whom the individual defendants never had contact, and it would also include many long-standing customers of TEI-Babcock.  SMS has not made, and indeed cannot make, any showing as to why TEI-Babcock's relationships with these long-standing customers should be terminated.  SMS is attempting to remove a competitor from the marketplace through litigation, and the injunctive relief that it seeks will cause great harm to TEI-Babcock.

The inappropriateness of the relief sought by SMS is especially apparent in light of the allegations set forth against TEI-Babcock in the Amended Complaint.  As discussed below, every allegation in the Amended Complaint against TEI-Babcock is asserted on the basis of "information and belief."  The Amended Complaint does not present a shred of evidence in support of its allegations that TEI-Babcock "conspired" with the individual defendants with respect to the alleged wrongdoing.  SMS therefore has not met its burden of showing a substantial likelihood of success on any of its claims against TEI-Babcock, and its request for injunctive relief should therefore be denied.

Finally, SMS's request for injunctive relief should be denied because SMS seeks to modify, rather than maintain, the status quo.  Although many of SMS's allegations in the Amended Complaint are framed as if a non-compete or non-solicitation exists between SMS and TEI-Babcock, no such agreement exists, nor has one ever existed.  An injunction that prohibits TEI-Babcock from contacting any customer of SMS would impose a non-compete and non-solicitation agreement where none currently exists, and would fundamentally change the positions of the parties.

## FACTUAL AND PROCEDURAL BACKGROUND

TEI is a general contractor that provides boiler equipment installation and maintenance to a variety of industries, including electric utilities. TEI is an affiliate of Babcock, which is a leading supplier of technology, equipment, and engineering services for upgrading and maintaining fossil-fired steam generating plants. Defendant Maliszewski is the President of Babcock.

In its Complaint, SMS alleges that three of its former employees, Kevin Smith, Norman Brody, and Jimmy Sherouse (collectively, the "Individual Defendants") planned to form a competing business during their employment with SMS. SMS further alleges that as part of that plan, the Individual Defendants misappropriated trade secret information belonging to SMS. Finally, SMS alleges, purely upon information and belief, that the Individual Defendants' alleged wrongdoing was committed with the knowledge of, and at the behest of, TEI-Babcock.

Not surprisingly, the Amended Complaint tells a one-sided story. The evidence to be presented by TEI-Babcock at the preliminary injunction hearing will show the following. In early 2008, the President of TEI, Dale Naughton, was contacted by a professional placement company, James H. Schneider & Associates ("Schneider"). Schneider informed Naughton that he had received resumes from several individuals working in the boiler industry, and inquired as to whether Naughton would be interested in interviewing those individuals. Naughton indicated that he would be interested, and Schneider forwarded the resume of Kevin Smith. Naughton subsequently interviewed Smith by telephone in February 2008.

Over the next few months, TEI had further discussions with Smith regarding the prospect of opening a TEI office in Florida.  In those discussions, Smith indicated that two of his co-workers at SMS, Brody and Sherouse, would also be interested in working for TEI in Florida.  During subsequent discussions between TEI and the Individual Defendants, TEI requested information about the financial targets they could meet if TEI decided to open an office in Florida.  The Individual Defendants thereafter provided the April 1, 2008 letter to Maliszewski referenced in the Amended Complaint.  These materials did not contain any specific information regarding SMS or its clients, and instead stated in very general terms the financial prospects of the proposed TEI office in Florida.  TEI eventually decided to open the Florida office, and the Individual Defendants were hired in May 2008 to operate that office.

The last of the Individual Defendants began working for TEI on or about June 3, 2008.  On June 6, 2008, TEI received a letter from SMS's counsel alleging that the Individual Defendants may be in possession of trade secret information belonging to SMS, and demanding that TEI not utilize or disclose any such information.  Following receipt of that letter from SMS's counsel, TEI took images of the Individual Defendants' e-mail accounts in an attempt to preserve all e-mails then existing in those accounts.  TEI then began to review the Individual Defendants' e-mail accounts to determine if they were in possession of any information belonging to SMS.[1]

---

[1] TEI's counsel called SMS's counsel on June 12, 2008 regarding the June 6th letter and left a voicemail.  SMS's counsel did not return that call.  Accordingly, the allegation in the Amended Complaint that "TEI did not respond to [the June 6th letter] prior to the commencement of this lawsuit," see Amended Complaint at ¶ 52, is not true.  Despite the call from TEI's counsel, SMS proceeded to seek an *ex parte* temporary restraining order, and apparently represented to the Court that it had been unable to provide notice of the hearing to TEI.

4

SMS's Complaint was filed on June 13, 2008, and TEI received notice of the lawsuit on June 16, 2008.[2]  Immediately upon receiving notice of the lawsuit, TEI locked the Individual Defendants out of the TEI computer network, and disconnected their cell phone and Blackberry service.  TEI took a second image of the Individual Defendants' e-mail accounts to capture any e-mails sent between the first image taken on June 10, 2008, and the second taken on June 17, 2008.  The e-mail accounts of Naughton and Maliszewski were also imaged on June 17, 2008 to preserve all e-mails then existing on the network.  The Individual Defendants were also instructed to turn over their laptop computers and PDA devices so that forensic images could be taken of those devices.  The Individual Defendants were suspended from employment on June 16, 2008, and have performed no services on behalf of TEI since that date.

During their brief employment with TEI, the Individual Defendants only had contact with six customers of SMS: (1) GRU – Deerhaven; (2) JEA – St. John's River Park; (3) Paragon; (4) Hercules; (5) Solutia; and (6) Gulf Power – Smith.  Following the Court's June 13, 2008 Order instructing Defendants to return any information or documents belonging to SMS, TEI determined that the Individual Defendants possessed six documents possibly belonging to SMS in their e-mail accounts.  These documents were spreadsheets used to prepare project bids, and they did not contain any specific information related to SMS's customers.  TEI also withdrew the only bid that had been submitted by the Individual Defendants using these bid preparation tools.

TEI-Babcock does not dispute that it engaged in discussions with the Individual Defendants regarding the opening of the Florida office during the period of time in which

---

[2] Maliszewski was served with the Complaint on June 16, 2008.  TEI and Babcock were not served until June 20, 2008.

those individuals were employed by SMS.  Because there is no non-compete or non-solicitation agreement in effect between SMS and TEI-Babcock, there was nothing improper about those discussions.  In the absence of a restrictive covenant, a company is free to contact and hire employees of its competitors provided that it does not instruct those employees to misappropriate confidential information belonging to its competitor.

Although TEI-Babcock does not dispute that it hired the Individual Defendants away from SMS so that they could open the Florida office, it did not instruct the Individual Defendants to access or misappropriate any trade secret information belonging to SMS.

The Amended Complaint not only tells a one-sided story.  Although the allegations asserted against the Individual Defendants are supported to a certain extent by verified allegations and affidavit testimony, every single allegation asserted against TEI-Babcock is asserted on the basis of information and belief.  Plaintiff alleges, for example, that "*[u]pon information and belief*, Defendant Maliszweski solicited the assistance of Defendants Brody, Sherouse, and Smith to develop a business competitive with SMS."  Plaintiffs further allege that "*[o]n information and belief*, Defendants Maliszewski, Babcock, and TEI *either explicitly or implicitly* knew that Defendants Brody, Sherouse, and Smith were utilizing SMS's confidential and proprietary information in developing a business plan directly competitive with SMS's business."  Conclusory statements aside, SMS has presented no evidence that TEI-Babcock was involved in any of the wrongdoing alleged in the Amended Complaint.  As discussed below, injunctive relief should not be granted against those defendants on the basis of unsupported allegations.

## ARGUMENT AND CITATION OF AUTHORITY

I.      **The Preliminary Injunction Standard and Applicable Burden of Proof.**

In order to obtain a preliminary injunction, SMS carries the burden of establishing: (1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury if the injunction is not issued; (3) that the threatened injury to SMS outweighs the potential damage that the injunction may cause Defendants; and (4) that the injunction will not be adverse to the public interest.  Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dunn, 191 F. Supp. 2d 1346, 1350 (M.D. Fla. 2002).  A preliminary injunction is an "extraordinary and drastic remedy that may not be granted unless the movant clearly establishes the burden of persuasion as to all four elements."  CBS Broadcasting, Inc. v. Echostar Communications Corp., 265 F.3d 1193, 1200 (11th Cir. 2001) (internal citation omitted).  In addition, injunctions may only be granted to prevent definite, future injuries, not conjectural ones.  Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994).

A plaintiff may support its application for a preliminary injunction by setting forth specific facts, either in a verified complaint or in an affidavit.  See, e.g., M.D. Fla. R. 4.05(b)(2), 4.06(b)(3).  In considering a motion for injunctive relief, a district court may rely on affidavits and hearsay materials that would not otherwise be admissible as evidence.  See Johnson Controls, Inc. v. Rumore, 2008 WL 203575, *4 (M.D. Fla. 2008)[3] (citation omitted).  Although the threshold of admissibility is lower in a preliminary injunction proceeding, the plaintiff still carries the burden of providing **some** evidence in support of each of the four prongs of the preliminary injunction standard.  The law is

---

[3] Attached hereto as Exhibit A.

likewise clear that allegations made on the basis of information and belief, rather than based upon personal knowledge, are generally insufficient to support a motion for preliminary injunction.  See Touchston v. McDermott, 120 F. Supp. 2d 1055, 1059 (M.D. Fla. 2000) (citing Wright & Miller, Federal Practice and Procedure § 2949 (2d ed. 1995)).

## II.    SMS Has Not Met its Burden of Demonstrating that Injunctive Relief Is Necessary.

Despite the fact that the Individual Defendants worked for TEI for approximately two weeks, and had contact with only six customers of SMS during that period of time, SMS seeks to effectively prevent TEI-Babcock from conducting business through its request for injunctive relief.  In its Motion, SMS seeks to prohibit TEI-Babcock from: (1) using or disclosing any confidential information belonging to SMS; (2) contacting any customer of SMS; and (3) soliciting any employee of SMS.  TEI-Babcock does not object to the first restraint as it has not and does not intend to utilize or disclose any confidential information belonging to SMS for any purpose.

The customer solicitation prohibition sought by SMS should be denied for at least three reasons.  First, the injunctive relief sought by SMS is so broad that the potential harm to TEI-Babcock far outweighs any injury to be suffered by SMS.  SMS seeks to enjoin TEI-Babcock from contacting *any* of its customers, regardless of whether those customers were or are affected by the alleged wrongdoing set forth in the Amended Complaint.  The vast majority of these customers had no contact with the Individual Defendants on behalf of TEI-Babcock, and many are long-standing customers of TEI-Babcock.  There is no connection between Defendants' alleged wrongdoing and the broad injunction sought by SMS.  Such an injunction would effectively prevent TEI-Babcock from doing business, and this extraordinary relief is not appropriate here.

Second, SMS presents no evidence that TEI-Babcock was involved in any of the alleged wrongdoing in the Amended Complaint.  As discussed below, *all* of the allegations against TEI-Babcock are asserted on the basis of information and belief, and SMS therefore has not come close to demonstrating a substantial likelihood of success on the merits.  The extraordinary relief sought by SMS is not justified by the information and belief allegations set forth in the Amended Complaint.

Finally, the injunctive relief sought by SMS will change, rather than maintain, the status quo.  By requesting that TEI-Babcock be enjoined from soliciting any of its customers, SMS seeks to impose a non-solicitation agreement where none exists.  For the purposes of injunctive relief, the status quo is defined according to the state of events that existed prior to the filing of the action.  Accordingly, TEI-Babcock should only be enjoined from using or disclosing any confidential information belonging to SMS, as that was all that it was prohibited from doing prior to the filing of this action.

## A.   The Harm to TEI-Babcock Outweighs Any Threatened Injury to SMS.

SMS carries the burden of establishing that its threatened injury outweighs the potential damage to TEI-Babcock if injunctive relief is granted.  <u>Dunn</u>, 191 F. Supp. 2d at 1350.  SMS has failed to carry this burden because the injunctive relief sought is so overbroad that the potential damage to TEI-Babcock far outweighs any injury to be suffered by SMS.  The relief sought by SMS will lock TEI-Babcock out of the industry during the pendency of this litigation, and that extraordinary relief is plainly not justified.

As discussed above, the Individual Defendants had contact with only six customers of SMS during their employment with TEI.  The Individual Defendants did not provide TEI any confidential information belonging to SMS related to those customers.

9

Moreover, the vast majority of the TEI-Babcock customers are long-standing customers of TEI-Babcock to whom bids have been submitted and work performed for a number of years. These long-standing clients were not introduced to TEI by the Individual Defendants. At most, an injunction prohibiting TEI-Babcock from contacting those six customers about their current projects is all that is needed to protect SMS's interests in its customer relationships. SMS, however, seeks to enjoin TEI-Babcock from contacting any of its customers, regardless of whether the Individual Defendants had any contact with those customers during their employment with either SMS or TEI. SMS like TEI-Babcock does work nationwide. The Individual Defendants worked primarily in the Southeast, and TEI hired the Individual Defendants to work in the same region.

There is also no basis to prohibit TEI-Babcock from continuing its relationships with long-standing customers that also happen to be customers of SMS. The injunctive relief sought by SMS would preclude TEI-Babcock from continuing its relationships with these long-standing customers, including large clients such as Gulf Power, The Southern Company, and Tampa Electric Company. SMS has made absolutely no showing as to why TEI-Babcock's relationships with these customers should be terminated. There is no allegation in the Amended Complaint that these customers were affected by any of the alleged wrongdoing, and SMS therefore has not demonstrated that these customers should be the subject of any injunction.

Finally, because TEI-Babcock does not know the identity of many of SMS's customers, and as a result, it would have no choice but to cease contact with all of its current and potential customers in order to ensure that it does not violate the injunction. Such an injunction will essentially prevent TEI-Babcock from conducting business

jeopardizing hundreds of jobs in Florida and elsewhere.  Although that is plainly SMS's intention, there is no basis for such a broad prohibition.

TEI-Babcock has asked SMS to provide a list of customers that it believes were affected by the Individual Defendants alleged actions, but SMS has refused to do so.  In order to justify injunctive relief that would prohibit TEI-Babcock from contacting certain customers, SMS must, at the very least, demonstrate that those customers were affected by Defendants' alleged wrongdoing.  SMS cannot simply allege, on information and belief, that certain of its customers were wrongly solicited, and on that basis, TEI should be prohibited from soliciting all of its own long-standing customers.  There is simply no nexus between the alleged wrongdoing and the injunctive relief sought by SMS.

**B.   SMS Has Not Demonstrated a Substantial Likelihood of Success on its Claims against TEI-Babcock.**

The requirement of showing a substantial likelihood of success on the merits is the "most crucial element required for the entry of a preliminary injunction."  Todd Christopher Intern. v. Samy Salon Systems, 2007 WL 843009, *4 (M.D. Fla. 2007)[4].  As with the other elements of the preliminary injunction standard, SMS cannot meet its burden of establishing a substantial likelihood of success with allegations made on the basis of information and belief, and instead must offer supporting evidence.  Touchston, 120 F. Supp. at 1059.

In its Motion, SMS contends that it has demonstrated a substantial likelihood of success on the following claims against TEI-Babcock: (1) violation of the Computer Fraud and Abuse Act; (2) tortious interference with business relationships; (3) trade secrets misappropriation; and (4) violation of the Florida Unfair and Deceptive Trade

---

[4] Attached hereto as Exhibit B.

11

Practices Act.  SMS has failed to meet its burden, however, because every allegation in the Amended Complaint against TEI-Babcock is asserted on the basis of information and belief.  As set forth below, SMS has presented absolutely no evidence in support of its claims against TEI-Babcock, and it has thus failed to establish that the extraordinary remedy that it seeks is necessary and appropriate.

          **1.**      **SMS's Claim for Violation of the Computer Fraud and Abuse Act.**

In Count I of the Amended Complaint, SMS purports to assert a claim against Defendants for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA").  In order to state a claim under the CFAA, a plaintiff must show that the defendant: (1) intentionally accessed; (2) a "protected computer"; (3) without authorization; and (4) caused "loss" of at least $5,000 over the course of one calendar year.  See 18 U.S.C. § 1030(a)(5)(A)(i)-(iii) and 1030(a)(5)(B)(i).

SMS's claim under the CFAA is pled in cursory fashion, and does not set forth any specific allegations of wrongdoing against Defendants.  The CFAA claim, however, appears to be premised upon SMS's allegations that: (1) the Individual Defendants accessed and utilized SMS's confidential materials during their employment with SMS with the intent of establishing of competing entity; and (2) Defendant Brody deleted files from his computer and e-mail account prior to the end of this employment with SMS.

The Amended Complaint presents no evidence or verified allegations against TEI, Babcock, or Maliszewski with respect to any of the wrongdoing that supports SMS's claim under the CFAA.  Instead, the Amended Complaint merely alleges that ***"[o]n information and belief***, Defendants Maliszewski, Babcock and TEI ***either explicitly or implicitly knew*** that Defendants Brody, Sherouse, and Smith were utilizing SMS's

confidential and proprietary information in developing a business plan directly competitive with SMS's business."   [Amended Complaint at ¶ 24 (emphasis added).] Parsing this vague language, SMS's CFAA claim against TEI-Babcock is apparently premised on the allegation – made on information and belief – that those defendants knew, "either explicitly or implicitly," that the Individual Defendants were utilizing SMS's confidential information to develop a competing business.

Setting aside the issue of whether mere knowledge of the actions of the Individual Defendants would suffice to impose liability under the CFAA, SMS has presented absolutely no evidence in support of its claim that TEI-Babcock was aware of the actions of the Individual Defendants, much less any evidence that TEI-Babcock was involved in that activity.   Indeed, TEI-Babcock's evidence will show that it was not aware that the Individual Defendants had improperly accessed or deleted any information belonging to SMS, and it certainly did not instruct them to do so.   Because SFS's claim under the CFAA against TEI-Babcock is premised entirely upon allegations made on information and belief, it has not carried its burden of establishing a substantial likelihood of success.

### 2.   SMS's Claim for Tortious Interference with Business Relationships.

SMS purports to assert a claim for tortious interference with business relationships in Count II of the Amended Complaint.   In order to state a claim for tortious interference with business relationships, SMS must allege: (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with that relationship by the defendant *that induces a breach*; and (4) damage to the plaintiff as a result of the breach induced by the defendant.   <u>KMS Restaurant Corp. v. Wendy's Intern., Inc.</u>, 361 F.3d 1321, 1325 (11th

Cir. 2004).  SMS has failed to establish a substantial likelihood of success on the merits of its claim for tortious interference with business relationships for at least two reasons. First, SMS does not allege that Defendants' actions led to the breach of **any** of its customer agreements or relationships.  Second, SMS has provided no evidence that TEI, Babcock, or Maliszweski instructed the Individual Defendants to solicit any customers on behalf of TEI during their employment with SMS.

SMS does not allege that Defendants' actions led to the breach of any of its customer relationships.  Instead, SMS merely alleges that "[d]uring and/or immediately after Defendants Brody, Smith, and Sherouse's employment with SMS, they solicited SMS's customers and employees and deleted customer contact information, thereby tortiously interfering with SMS's business relationships with those individuals and/or companies."  [Amended Complaint at ¶ 63.][5]  Even if this allegation is accepted as true, mere solicitation does not amount to tortious interference with a business relationship, which requires the inducement of a breach.  At best, SMS's claim can be construed as a claim for attempted tortious interference, and no such cause of action exists under Florida law.  In order to state a claim, SMS must at least allege that Defendants caused the breach of a specific customer relationship, and SMS does not do so.

Even if SMS had stated the requisite elements of a tortious interference claim, it has not established a substantial likelihood of success on that claim against TEI-Babcock because it has provided no evidence that those defendants were involved in any alleged solicitations.  Instead, the Amended Complaint alleges only that "Defendants Babcock,

---

[5] Any alleged solicitation of SMS's customers or employees occurring after the Individual Defendant's employment with SMS is not actionable because of the absence of any non-compete or non-solicitation agreement between the parties.

TEI, and Maliszewski, **on information and belief** have full knowledge of Defendants Brody, Smith, and Sherouse's solicitation of both SMS's employees and clients and **either explicitly or implicitly** have encouraged such actions and benefitted (sic) from them." [Amended Complaint, ¶ 42 (emphasis added)]   Again, an allegation merely made on information and belief is insufficient to establish a substantial likelihood of success, especially considering the extraordinary relief sought by SMS.   There is absolutely no evidence that TEI-Babcock instructed the Individual Defendants to solicit SMS's customers and employees, nor is there any evidence that they were even aware of the Individual Defendants' actions.   SMS has thus failed to meet its burden.

### 3.      SMS's Claim for Misappropriation of Trade Secrets.

In Count III of the Amended Complaint, SMS alleges a claim for violation of Florida's Uniform Trade Secrets Act, F.S.A. § 688.001 <u>et seq.</u>   In order to prevail on its trade secrets claim, SMS must show that Defendants misappropriated trade secret information, and that this information was the subject of reasonable efforts by SMS to maintain its secrecy.   <u>See, e.g.</u>, <u>Furmanite America, Inc. v. T.D. Williamson, Inc.</u>, 506 F. Supp. 2d 1134, 1140-41 (M.D. Fla. 2007).

In its Motion, SMS contends that it has established its trade secrets claim by showing that Defendant Sherouse sent an e-mail to over one-hundred clients, contacts, and customers of SMS soliciting their business for TEI while he was still employed by SMS.   [Motion at 11.]   SMS also contends that it has established its trade secrets claim by showing that the Individual Defendants were given access to SMS's trade secrets information, and that they misappropriated that information in order to establish a competing business.   [<u>Id.</u> at 12.]   SMS's argument fails on multiple levels.

15

First, SMS has provided no evidence that any of the materials provided to the Individual Defendants during their employment actually constitute trade secret materials for the purposes of the Florida Uniform Trade Secrets Act. The act defines a "trade secret" as information that:

> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

F.S.A. § 688.002(4). The Amended Complaint contains only conclusory statements with respect to these two elements, and sets forth no supporting evidence. Although SMS contends in conclusory fashion that the alleged trade secret materials derive economic value from not being generally known to others, it does not explain the basis of that contention, nor does it even attempt to quantify the value of the alleged trade secret materials. Moreover, SMS fails to describe with any particularity the steps that it has taken to maintain the secrecy of its alleged trade secret information. For the purposes of a request for injunctive relief, SMS must provide evidence in support of its contention that the materials constitute trade secret materials.

Second, it is unlikely that Sherouse's e-mail constitutes a trade secret for the purposes of the Florida Uniform Trade Secrets Act. The majority of the recipients of Sherouse's e-mail were employees of The Southern Company, and it is no secret that The Southern Company is a customer of SMS. Unless SMS can demonstrate that the e-mail addresses of the recipients meet the two-part trade secret test, Sherouse's e-mail did not constitute the disclosure of trade secrets information. Moreover, even if Sherouse's e-

16

mail contained trade secret information, SMS waived any trade secrets claim by attaching that e-mail as an exhibit to its Complaint.  See, e.g., Littlejohn v. Bic Corp., 851 F.2d 673, 678-79 (3rd Cir. 1988) (disclosure in open court waives claim of confidentiality); National Polymer Products, Inc. v. Borg-Warner Corp., 641 F.2d 418, 421-24 (6th Cir. 1981) (same).

Third, SMS has presented no evidence that Mr. Sherouse's e-mail was sent at the instruction of TEI-Babcock.  SMS not only fails to make that allegation, but evidence to be presented by TEI-Babcock will show that it was not aware of Mr. Sherouse's intention to send the e-mail in question, and that it did not instruct him to do so.  Once again, SMS attributes the actions of the Individual Defendants to TEI-Babcock with no foundation.

With respect to SMS's general allegation that the Individual Defendants misappropriated trade secret materials for the use and benefit of TEI-Babcock, SMS again provides no evidence that TEI-Babcock was involved in this alleged misappropriation.  The Amended Complaint alleges merely that "[o]n information and belief, Defendants Maliszewski, Babcock, and TEI either explicitly or implicitly knew that Defendants Brody, Sherouse, and Smith were utilizing SMS's confidential and proprietary information in developing a business plan directly competitive with SMS's business."  [Amended Complaint at ¶ 24.]  This unsubstantiated allegation is insufficient to establish a substantial likelihood of success on the merits.   TEI-Babcock will demonstrate that it did not instruct the Individual Defendants to misappropriate any documents or information from SMS, and that it was unaware that the Individual Defendants had any materials that may belong to SMS in their possession until after this

lawsuit was filed.   Once again, SMS attributes the alleged actions of the Individual Defendants to TEI-Babcock without providing any evidence in support of that attribution.

### 4.   SMS's Claim for Violation of the Florida Deceptive and Unfair Trade Practices Act.

Finally, SMS has not established a substantial likelihood of success on its claim against TEI-Babcock for violation of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA").   In its Motion, SMS contends that it has demonstrated a substantial likelihood of success on that claim because it has "established that Defendants Brody, Smith, and Sherouse, in conjunction with Babcock, TEI, and Maliszewski, conspired together to misappropriate SMS's trade secrets and proprietary information for the purpose of unfairly competing with SMS."

SMS's conclusory statement aside, it has established nothing with respect to TEI-Babcock.   As with all of its other claims against TEI-Babcock, the allegations underlying SMS's FDUTPA claims against those defendants are asserted on the basis of information and belief.   SMS has presented no evidence that Babcock, TEI, or Maliszewski were aware of any actions by the Individual Defendants that SMS contends to constitute unfair trade practices, and SMS certainly has not "established" that TEI-Babcock conspired with the Individual Defendants to commit unfair trade practices.

### C.   SMS's Motion Inappropriately Seeks to Modify, Rather than Preserve, the Status Quo.

Finally, SMS's request for injunctive relief should be denied because it seeks to modify, rather than maintain, the status quo.   The "chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated."   <u>Northeastern Fl. Chapter of Ass'n of Gen. Contractors of Am. v.</u>

City of Jacksonville, Fl., 896 F.2d 1283, 1284 (11th Cir. 1990).  The injunction sought by SMS, which would completely prohibit TEI-Babcock from contacting any customers of SMS, would change the position of the parties, and would impose restrictions upon TEI-Babcock that did not exist at the time that this action was filed.  SMS seeks to impose a broad non-compete and non-solicitation agreement upon TEI-Babcock that did not exist when this action was filed, and indeed has never existed.

In order to preserve the status quo in this case, TEI-Babcock should only be enjoined from any activities that were prohibited at the time this action was filed. Because there is no non-solicitation agreement between the parties, TEI-Babcock was free to solicit the customers of SMS provided that it did not utilize trade secret information belonging to SMS in doing so.  An injunction preventing Babcock-TEI from contacting any customer of SMS, regardless of whether SMS's trade secret information is used in that solicitation, would alter the status quo, and would impose restrictions upon TEI-Babcock that did not already exist.

The basis for SMS's request for injunctive relief is that Defendants have allegedly misappropriated confidential information belonging to SMS.    An injunction that prohibited Defendants from utilizing any confidential information belonging to SMS for any purpose would therefore fully protect SMS's interests.  An injunction that completely prevents TEI-Babcock from contacting any customer of SMS, on the other hand, is far broader than is necessary to protect SMS's interests, and would cause great harm to TEI-Babcock.  SMS's request for such an overbroad injunction, which has no nexus with the alleged wrongdoing in this case, should be denied.

**III.    A Substantial Bond Should Be Imposed Upon the Grant of Any Injunctive Relief.**

If the Court finds that injunctive relief is necessary in this case, SMS should be ordered to post a substantial bond.  Fed. R. Civ. P. 65(c) provides that a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  See also Piambino v. Bailey, 757 F.2d 1112, 1143 (11th Cir. 1985) ("before a court may issue a preliminary injunction, a bond must be posted").  The injunctive relief sought by SMS will prevent TEI-Babcock from doing business, and such an injunction will result in tens of millions of dollars in lost business.  Specific evidence with respect to the amount of the bond that SMS should be required to post will be presented at the hearing.

**CONCLUSION**

For the foregoing reasons, SMS's Motion should be denied.

Respectfully submitted this 26th day of June, 2008.

/s/ Richard G. Salazar
Richard G. Salazar
Florida Bar No. 0899615
**Fowler White Boggs Banker P.A.**
501 East Kennedy Boulevard, Suite 1700
Tampa, Florida  33602
Telephone:  (813)-228-7411
Facsimile:   (813) 229-8313
Email: rsalazar@fowlerwhite.com

Local Counsel for Defendants Thermal
Engineering Construction Services, Inc.,
Babcock Power Services, Inc., and Theodore
Maliszewski

**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

SOUTHEASTERN MECHANICAL
SERVICES, INC.,

      Plaintiff,

v.

NORMAN BRODY, JAMES SHEROUSE,
KEVIN SMITH, THERMAL
ENGINEERING CONSTRUCTION
SERVICES, INC. (A/K/A TEI
CONSTRUCTION SERVICES, INC.),
BABCOCK POWER SERVICES, INC.,
AND THEODORE MALISZEWSKI,

      Defendants.

CIVIL ACTION FILE
NO. 8:08-cv-1151-T-30EAJ

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on June 26, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:  Richard C. McCrea, Attorney, Greenberg Traurig LLP, 625 East Twiggs Street, Suite 100, Tampa, FL  33602 , David Long-Daniels, Todd D. Wozniak, Lawrence A. Dietrich,  and Lindsey Camp Edelmann, Greenberg Traurig LLP, 3290 Northside Parkway, Suite 400, Atlanta, GA  30327 and Thomas T. Steele and Sarah Marie Hammet, Steele Law Group P.A. 501 E. Kennedy Blvd., Ste 425  Tampa, FL 33602.

      I FURTHER CERTIFY that on June 26, 2008, I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:  None.

                        /s/Richard G. Salazar

21