UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| SOUTHEASTERN MECHANICAL SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> NORMAN BRODY, *et al.* <br><br> Defendants. | CIVIL ACTION FILE <br> NO. 8:08-cv-1151-T-30EAJ |

**DEFENDANT THERMAL ENGINEERING CONSTRUCTION
SERVICES, INC.'S MOTION FOR SPOLIATION SANCTIONS
AND INCORPORATED MEMORANDUM OF LAW**

COMES NOW Defendant Thermal Engineering Construction Services, Inc. ("TEI") and hereby files its Motion for Spoliation Sanctions and Incorporated Memorandum of Law.

**INTRODUCTION**

Plaintiff Southeastern Mechanical Services, Inc. ("SMS") should be sanctioned for its destruction of relevant evidence. As set forth below, SMS failed to adopt a proper litigation hold procedure when it initiated this action, which resulted in the automatic overwriting of the backup tapes that contained its employees' e-mails and other electronic information. SMS's failure to suspend its backup tape rotation cycle resulted in the destruction of relevant evidence, including evidence related to SMS's claim that Defendant Norman Brody deleted electronic materials prior to the termination of his employment, as well as other materials that are central to the claims and defenses asserted in this matter.

Sanctions for evidence spoliation are warranted when: (1) the opposing party is prejudiced by the spoliation; (2) the evidence was destroyed through bad faith or neglect; and (3)

the prejudice cannot be cured. These three factors are met here, and sanctions are therefore appropriate.

TEI requests that SMS be sanctioned in the following respects. First, at a minimum, all allegations related to Mr. Brody's alleged deletion of electronic data should be struck from the Third Amended Complaint. SMS destroyed the best evidence related to those allegations and they should therefore be struck. Second, SMS should be barred from presenting any testimony, expert or otherwise, regarding Mr. Brody's alleged deletion of electronic data. Finally, an adverse inference should be drawn against SMS that the destroyed evidence is unfavorable to its claims against the defendants, as detailed below.

## ARGUMENT AND CITATION OF AUTHORITY

**I. SMS's Failure to Suspend the Overwriting of its Backup Tapes Destroyed Relevant Evidence.**

SMS's failure to comply with its obligation to preserve potentially relevant evidence became apparent during the deposition of its IT manager, Samuel Jones. Mr. Jones testified that, despite the fact that electronic materials are central to many of the claims and defenses asserted in this matter, SMS failed to suspend the automatic overwriting of the backup tapes that archive employee e-mails. SMS's failure to suspend the overwriting of its backup tapes resulted in the destruction of relevant evidence.

Mr. Jones testified that SMS utilizes four network servers, which are referred to as "Kingfish," "Tarpon," "New MAS, and "F Drive." [*See* Dep. of Sam Jones, excerpts attached hereto as **Exhibit A**, at pp. 25/22 – 26/3.] Employee e-mails are kept on the Kingfish server. [*Id.* at p. 29/7-12.] Other information maintained in Microsoft Outlook such as calendar items and tasks are also stored on the Kingfish server. [*Id.* at p. 89/8-14.] E-mails are retained on the Kingfish server until the employee deletes them. [*Id.* at pp. 30/24 – 31/1.] Information

maintained on the Kingfish server, including e-mails, is backed up on a daily basis to backup tapes. [*Id.* at p. 31/14 – 18.] The backup tapes are overwritten every two weeks. [*Id.* at p. 34/2 - 5.] Accordingly, any e-mails deleted by employees are only preserved for a two week period on the backup tapes, and then they are permanently lost when the backup tape is overwritten (i.e., an e-mail deleted on June 1, 2008 would be preserved on a backup tape until June 15, 2008, when it would be permanently overwritten).

Mr. Jones testified that SMS did not suspend the two-week tape rotation cycle upon the commencement of this litigation:

> Q: Do you know if any tapes of backups of the Kingfish server have been pulled from rotation since this lawsuit was filed?
>
> A: No.
>
> Q: You don't know or none have been?
>
> A: None have been.
>
> Q: Have you been asked to pull any tapes from rotation?
>
> [Objection omitted.]
>
> A: No.
>
> Q: Have you asked anyone else to pull tapes from rotation so they're not overwritten?
>
> A: No.
>
> Q: Are you aware of any tapes of the Kingfish backup being pulled from rotation at any time in the past?
>
> A: No.

[*Id.* at pp. 34/9 – 35 / 6.]

SMS not only failed to suspend the automatic overwriting of its backup tapes prior to Mr. Jones' deposition in November 2008, it did not do so following that deposition, despite a specific

3

request from TEI's counsel.  [*Id.* at p. 41/4-9.]  During Mr. Jones' deposition, TEI's counsel requested that SMS immediately suspend the overwriting of its backup tapes.  Prior to filing this motion, TEI's counsel inquired as to whether SMS had complied with that request.  SMS's counsel responded that it had not.  [Relevant correspondence between counsel for TEI and SMS is attached hereto as **Exhibit B**.]  Accordingly, any e-mails deleted by SMS employees earlier than two weeks from the present date are not maintained on any backup tapes and have been permanently lost.

The evidence destroyed by SMS is relevant in at least two respects.  First, SMS's failure to suspend its tape rotation cycle destroyed evidence relevant to its claims against the defendants, including its claims arising from the alleged deletion of e-mails and other information by Mr. Brody.  Second, SMS's decision to not institute an appropriate litigation hold procedure, coupled with its failure to even attempt to locate documents responsive to TEI's discovery requests, likely resulted in the permanent destruction of documents and information responsive to those requests.  Even if SMS now searches for those responsive electronic materials, any documents deleted more than two weeks ago are permanently lost.

### 1. SMS Destroyed the Best Evidence Regarding Its Claims Arising from Mr. Brody's Alleged Deletion of Electronic Data.

In its Third Amended Complaint, SMS contends that Defendant Brody "deleted files within SMS's computer systems in an attempt to not only cover up their actions, but also to prevent SMS from utilizing its own contact information to conduct business."  [Third Amended Complaint, Doc. 197, at ¶ 38.]  SMS further alleges that "Defendant Brody's deletion of files on his computer was an effort to destroy evidence of his solicitations of business opportunities, customers, and SMS employees."  [*Id.* at ¶ 39.]  SMS asserts claims against all of the defendants arising from Mr. Brody's alleged deletion of electronic information.  Specifically, SMS asserts

4

claims against all defendants under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and for tortious interference with business relations, related to Mr. Brody's alleged deletion of electronic data. [*Id.* at ¶¶ 53-68.]

SMS's Third Amended Complaint is not specific regarding the "electronic files" allegedly deleted by Mr. Brody. Mr. Jones testified, however, that the materials allegedly deleted by Mr. Brody consisted of his e-mails, contacts, and calendar items maintained in Microsoft Outlook. [Ex. A at pp. 88/20 – 89/14.] Mr. Jones further testified that he discovered the alleged deletion of the items when he reviewed Mr. Brody's e-mail account either "upon his departure" or "within a few days" of his departure. [*Id.* at p. 92/12 – 21.] Mr. Brody's last day of employment with SMS was May 27, 2008. [Third Amended Complaint at ¶ 46.]

Although Mr. Jones reviewed Mr. Brody's e-mail account within a few days of his departure, and formed a belief at that time that Mr. Brody had deleted e-mails and contacts from his account, Mr. Jones did not suspend the overwriting of the backup tapes, nor did he review the backup tapes at that time or take any steps to see if the information allegedly deleted by Mr. Brody could be restored. Instead, Mr. Jones waited more than two weeks before reviewing the backup tapes. [Ex. A at 194/18 – 195/3.] By that time, any evidence that Mr. Brody had deleted any electronic information had been permanently destroyed due to SMS's two-week tape rotation cycle. Mr. Jones testified that he was working during the period between his initial review of Mr. Brody's e-mails and his review of the backup tapes more than two weeks later, and that nothing precluded him from reviewing the backup tapes at an earlier time. [*Id.* at 195/5 – 8.]

Moreover, SMS had already formed a belief that the Individual Defendants had violated the Computer Fraud and Abuse Act by June 3, 2008, at the very latest. On that date, SMS's counsel sent a letter to counsel for TEI and Babcock stating SMS's belief that the Individual

Defendants had violated the Computer Fraud and Abuse Act through improper usage of SMS's computer network. [*See* 6/3/08 letter from SMS's counsel, attached hereto as **Exhibit C**.] That letter was sent seven days following Mr. Brody's last day of employment. Nevertheless, SMS did not review its backup tapes for at least another week, *see* Ex. A at pp. 194/18 – 195/3, and it never suspended the automatic overwriting of the backup tapes. [Ex. A at 194/18 – 195/3.]

SMS's failure to suspend the automatic overwriting of its backup tapes destroyed the best evidence of whether Mr. Brody actually deleted any electronic information. If Mr. Brody deleted e-mails and contact information from his Outlook account, that deleted information would have been retained on the backup tapes for two weeks after it was deleted. SMS could have easily determined whether Mr. Brody deleted any materials by simply comparing the contents of his e-mail account with the information stored on the backup tapes. That evidence, however, has been permanently destroyed.

In addition, the backup tapes contained the only evidence as to the timing of any deletion of data from Mr. Brody's e-mail account. The backup tapes would show the exact day that any information was removed and what, if anything, was deleted or removed. The timing of the removal could also indicate whether or not Mr. Brody was involved. Assuming that information was actually removed from Mr. Brody's e-mail account, it could have been lost following his last day of employment, which would show that he was not responsible for the deletion of any electronic data. Moreover, because SMS failed to take the tapes out of rotation, it is impossible to determine what allegedly deleted data could have been restored from the backup tapes, lessening or eliminating any alleged damage to SMS.[1] That evidence has been permanently lost due to SMS's bad faith or, at best, inexcusable neglect.

---

[1]  By failing to immediately secure the backup tapes, SMS failed in its obligation to mitigate any damages it now claims to have suffered as a result of lost data.

### 2. SMS's Failure to Search for Responsive Documents and Information Responsive to TEI's Discovery Requests.

The defendants have also been prejudiced by SMS's destruction of electronic data due to SMS's failure to review its electronic information to locate documents responsive to discovery requests. SMS's failure to comply with its discovery obligations regarding electronic information is addressed in detail in TEI's Motion to Compel Electronic Discovery, filed on February 18, 2009 (Doc. 247.) Briefly, TEI contends that SMS made no effort to search for electronic information responsive to many of its discovery requests, despite its agreement to produce such information. SMS's lack of good faith is evidenced by the testimony of its own employees, including Mr. Jones. In his deposition, Mr. Jones testified that he is the only individual at SMS with the ability to locate certain electronic documents, and he further testified that he made no attempt to locate many of the documents sought in TEI's discovery requests. Mr. Jones testified, for example, that he did not review the e-mail accounts of the Individual Defendants in an attempt to locate responsive information. [*See* Doc. 247 at pp. 5-6.] Mr. Jones also testified that he only reviewed the e-mail accounts of three SMS employees, although TEI's discovery requests were not limited to those employees, and despite SMS's acknowledgment that several other employees have knowledge relevant to the litigation. [*Id.* at pp. 6-7.]

SMS also apparently failed to conduct any search for communications involving one of its employees, James Goodwin, who was formerly employed by a corporate affiliate of TEI. [*Id.* at pp. 7-9.] As discussed in TEI's Motion to Compel, Mr. Goodwin has admitted that he misappropriated information belonging to TEI's corporate affiliate, which he then used during his employment with SMS. [*Id.* at pp. 7-8.] Although SMS represented that it had no documents responsive to discovery requests related to Mr. Goodwin, it is apparent from the

testimony of Messrs. Jones and Goodwin that SMS never attempted to locate such documents. [*Id.* at 7-9.]

In its Motion to Compel, TEI seeks an order compelling SMS to comply with its discovery obligations by performing a comprehensive search of its electronically stored information.  Due to SMS's failure to preserve its electronically stored information, however, any searches that it now performs will be compromised.  Even if SMS now reviews its electronic data - which it should have done many months ago - any information that was deleted more than two weeks prior to the search will not be captured.  If, for example, Mr. Goodwin deleted relevant e-mails more than two weeks ago, either in an attempt to destroy evidence of wrongdoing or merely through routine maintenance of his e-mail inbox, those e-mails have been permanently lost.  Had SMS complied with its obligation to preserve potentially relevant data, any deleted information could have been restored from the backup tapes.  Moreover, as this Court has recognized, "[e]lectronic data, such as emails are discoverable . . . [and] [t]he producing party has the obligation to search available electronic systems for ***deleted*** emails and files." *Wells v. XPEDX*, 2007 WL 1200955, at *1 (M.D. Fla. 2007) (emphasis added). ]  SMS cannot comply with its obligation to review deleted e-mails and files for responsive information because it has permanently destroyed those materials.

**II.     SMS Should be Sanctioned for Its Destruction of Evidence.**

The Court has broad discretion to impose sanctions for spoliation, under both its inherent powers and Fed. R. Civ. P. 37.  *See Hendricks v. Smartvideo Technologies, Inc.*, 511 F. Supp. 2d 1219, 1232 (M.D. Fla. 2007); *see also Flury v. Daimler Chrysler Corp.*, 427 F. 3d 939, 944 (11th Cir. 2005) ("broad discretion . . . derives from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases").  The Eleventh Circuit

recently noted that "federal law governs the imposition of spoliation sanctions," but that the court's "opinion is also informed by" state law because the Eleventh Circuit has not established specific guidelines on spoliation. *Flury*, 427 F.3d at 944. After noting that "Georgia state law on spoliation is wholly consistent with federal spoliation principles," the Eleventh Circuit considered the following factors:

> (1) whether the defendant was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the plaintiff acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded.

*Id.* at 944-45. Importantly, "since *Flury*, bad faith is only one factor to consider . . . now courts 'should weigh the degree of the spoliator's culpability against the prejudice to the opposing party." *Brown*, 563 F.3d at 1381 (quoting *Flury*, 427 F.3d at 946).[2]

State courts in Florida apply similar factors when considering whether to impose spoliation sanctions. Whether sanctions are appropriate for the failure to preserve evidence depends on: (1) the extent of prejudice suffered by the opposing party; (2) the willfulness or bad faith of the responsible party; and (3) whether the prejudice can be cured. *Nationwide Lift Trucks, Inc. v. Smith*, 832 So.2d 824, 825-26 (Fla. 4th Dist. Ct. App. 2002) (striking defenses because of negligent spoliation); *see also Sponco Mfg., Inc. v. Alcover*, 656 So.2d 629, 630 (Fla. 3rd Dist. Ct. App. 1995) (affirming default judgment against spoliator). Applying these three factors to the present case, it is clear that sanctions are warranted here.

---

[2] This finding distinguishes certain pre-*Flury* cases such as *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997), which required a finding of bad faith before an adverse inference could be drawn from a party's failure to preserve evidence. *See Brown*, 563 F.3d at 1381 (authorizing adverse inference of negligent destruction of evidence). The *Brown* court also noted that the fifth factor identified in *Flury* (related to the exclusion of expert testimony) need not be considered where it appears inapplicable. *See id.*, 563 F.3d at 1377, n. 3.

### 1. The Defendants Have Been Prejudiced by SMS's Spoliation of Evidence.

A party seeking sanctions for spoliation is *not* required "to show, before obtaining sanctions, that unproduced evidence contains damaging information." *Brown*, 563 F. Supp. 2d at 1379 (internal citation omitted). Indeed, such a showing may not be possible where information has been permanently destroyed. Instead, the proper focus in determining prejudice is "on the relevance of the destroyed evidence." *Id.* (citing *Flury*, 427 F.3d at 945).

As discussed above, the evidence destroyed by SMS is relevant to a number of claims and defenses in this matter. First, the best evidence as to whether Mr. Brody deleted electronic information has been permanently lost. SMS's destruction of that evidence deprives TEI and the other defendants of the opportunity to controvert SMS's allegations with respect to Mr. Brody, and the defendants have therefore been prejudiced. *See, e.g., Flury*, 427 F.3d at 946 (noting that due to the plaintiff's spoliation," the defendant lost a valuable opportunity to test plaintiff's theory . . .").

In addition, SMS's deletion of the backup tapes, coupled with its failure to previously search for responsive information in response to TEI's discovery requests, likely destroyed evidence relevant to defenses asserted by the defendants. For example, TEI and the other defendants contend that SMS cannot prevail on its claims due to SMS's unclean hands arising from its hiring of Mr. Goodwin. But as set forth in TEI's Motion to Compel, SMS never attempted to locate documents responsive to discovery requests related to Mr. Goodwin. Even if SMS performs those searches now, the searches will be compromised due to the deletion of the backup tapes. Any e-mails related to Mr. Goodwin that were deleted more than two weeks prior to any search have been permanently lost. SMS also failed to review the e-mail accounts of other employees that it has acknowledged as having relevant knowledge, as detailed in the

Motion to Compel. Any searches now conducted on those employees' e-mail accounts will be similarly compromised.

### 2. SMS Failed to Act in Good Faith.

SMS failed to act in good faith when it allowed the destruction of relevant evidence that it was under an obligation to maintain, even after TEI's counsel specifically requested that it retain those materials. As this Court has recognized, "[w]hile a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." *Optowave Co., Ltd. v. Nikitin*, 2006 WL 2321422, at *7 (M.D. Fla. 2006). SMS knew or reasonably should have known that electronic information maintained on its backup tapes was relevant to claims and defenses asserted in this action, and that such materials would be requested by the defendants in discovery. SMS cannot seriously argue that it had no obligation to retain backup tapes containing the e-mails of Mr. Brody and Mr. Goodwin, for example, especially after the defendants specifically requested the production of all communications involving those individuals. Given the nature of the allegations SMS asserted as early as June 3, 2008 in its counsel's demand letter to TEI, SMS has no excuse for its failure to preserve relevant electronic data in this case.

SMS's failure to institute an appropriate litigation hold procedure supports a finding of bad faith. Indeed, as the Advisory Committee explained in its note to Fed. R. Civ. P. 37, the failure to suspend the routine deletion of electronic information is not consistent with good faith:

> Good faith in the routine operation of an information system may involve a party's intervention to modify or suspend certain features of that routine operation

11

> to prevent the loss of information, if that information is subject to a preservation obligation . . . [A] party is not permitted to exploit the routine operation of an information system to thwart discovery obligations by allowing the operation to continue in order to destroy specific stored information that it is required to preserve. When a party is under a duty to preserve information because of pending or reasonably anticipate litigation, intervention in the routine operation of an information system is one aspect is often called a 'litigation hold.'[3]

Moreover, in *Zubalake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003), the court noted that backup tapes containing potentially relevant information should be preserved:

> If a company can identify where particular employee documents are stored on backup tapes, then the tapes storing the documents of 'key players' to the existing or threatened litigation should be preserved if the information contained on those tapes is not otherwise available.

*Zubalake*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). Here, SMS was fully aware that its employee e-mails were stored on backup tapes, including "key players" to the litigation, and yet, it permitted the destruction of those materials by not instituting a litigation hold procedure.

At the time that SMS's counsel threatened to file suit on June 3, 2008, SMS knew that its electronically stored information would be at issue. Indeed, several of SMS's claims relate to the alleged deletion of electronically stored information, all of which was still stored on the backup tapes even after it was allegedly deleted from the server. At the very least, SMS should have taken its then-current backup tapes out of rotation when it sent its June 3, 2008 demand letter. If it had done so, all employee e-mails that existed at that time, along with any e-mails deleted during the prior two weeks (which would have been inclusive of Brody's and Sherouse's last full week of employment with SMS), would still be in existence, regardless of whether the data was later deleted by anyone.

---

[3] This note is in response to the recently enacted Fed. R. Civ. P. 37(e), which provides that "[a]bsent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, **good-faith** operation of an electronic discovery system." (Emphasis added).

12

SMS's lack of good faith is also made apparent by the fact that TEI's counsel requested in November 2008 that SMS suspend the routine deletion of backup tapes, and SMS failed to comply with that request. As discussed above, TEI's counsel requested during Mr. Jones deposition in November that SMS suspend its tape rotation cycle. SMS's counsel has acknowledged that SMS did not comply with that request. [*See* Ex. B.]

Moreover, even if SMS destroyed relevant evidence out of negligence, rather than bad faith, sanctions are still appropriate. *Flury* makes clear that bad faith is only one of five factors to be considered by the court. *Flury*, 427 F.3d at 944-45. Courts applying *Flury* have imposed sanctions upon a finding of negligence by the spoliator, and without any finding of bad faith or willfulness. *See, e.g., Brown*, 563 F.3d at 1381 (authorizing adverse inference due to negligent destruction of evidence). At best, SMS was negligent in its failure to impose a litigation hold, and sanctions are warranted due to the prejudiced suffered by the defendants.

### 3. SMS's Spoliation of Evidence Cannot Be Cured.

Finally, sanctions are appropriate because SMS's destruction of relevant evidence cannot be cured. All of the e-mails and other electronic materials that were overwritten on the backup tapes cannot be restored and are permanently lost. The evidence is also not available from any other source. Any e-mails deleted by SMS employees are only maintained on the backup tapes, and only for two weeks following deletion. Accordingly, any e-mails that were deleted more than two weeks ago are lost forever due to SMS's bad faith or neglect.

### III. SMS Should Be Sanctioned Through the Striking of Certain Allegations of Its Complaint, and Through the Drawing of an Adverse Inference.

Upon determining that sanctions are appropriate, the Court may exercise its broad discretion to impose any number of sanctions, including dismissal of the case, striking the

pleadings, excluding testimony, and creating a presumption or "adverse inference" against the spoliator. *See Flury*, 427 F.3d at 945. Indeed, "[u]nder Florida law, the remedy for a party failing to produce crucial but unfavorable evidence that is destroyed or inexplicably disappears is an adverse inference or discovery sanctions." *Optowave Co. Ltd. v. Nikitin*, 2006 WL 3231422, at *8 (M.D. Fla. 2006) (citing *Martino v. Wal-Mart Stores, Inc.*, 908 So.2d 342 (Fla. 2005). In this case, as discussed herein, the Court should dismiss Plaintiff's claims related to Mr. Brody's alleged deletion of electronic information, and should further create a presumption against SMS to be applied by the fact-finder during summary judgment proceedings and any trial of this matter.

At a minimum, the allegations related to Mr. Brody's alleged deletion of electronic information should be struck from the Third Amended Complaint. SMS should also be barred from presenting any testimony, expert or otherwise, related to Mr. Brody's alleged deletion of data. SMS destroyed the only evidence that would show whether Mr. Brody in fact deleted any information prior to the termination of his employment. The defendants cannot effectively defend against that claim due to SMS's destruction of evidence. Accordingly, the allegations related to Mr. Brody's alleged deletion of data set forth in Paragraphs 38, 39, 51, 56, and 63 of the Third Amended Complaint should be struck.

In addition, an adverse inference should be drawn against SMS by the fact-finder during summary judgment proceedings and any trial in this case. *See, e.g., Brown*, 563 F. Supp. 2d at 1381-82 (adverse inference drawn due to negligent destruction of file); *St. Cyr v. Flying J, Inc.*, 2007 WL 1716365 (M.D. Fla. 2007) (adverse inference drawn due to destruction of evidence); *Optowave Co. v. Nikitin*, 2006 WL 3231422 (M.D. Fla. 2006) (adverse inference drawn due to destruction of electronic information). Here, the fact-finder should presume that any deleted

14

information contained evidence unfavorable to SMS, and should specifically find that: (1) the deleted evidence supported Mr. Brody's defense that he did not delete any electronic information (if those allegations are not struck from the Third Amended Complaint; (2) the deleted evidence supports the defendants' defense that SMS has unclean hands in its hiring of Mr. Goodwin; and (3) the deleted evidence supports the defenses of TEI, Babcock, and Mr. Maliszewski that they did not "conspire" with the Individual Defendants with respect to any of the alleged wrongdoing set forth in the Third Amended Complaint; and, (4) the deleted data could have been recovered, and as such, SMS has not been damaged by any alleged deletion of data.

## CONCLUSION

For the foregoing reasons, TEI respectfully requests that its Motion for Spoliation Sanctions be granted, and that SMS be sanctioned in the manner sought herein.

Respectfully submitted this 6th day of March, 2009.

/s/ Matthew J. Pearce
Christopher P. Galanek
Georgia Bar No. 282390
(Admitted pro hac vice)
Matthew J. Pearce
Georgia Bar No. 569019
(Admitted pro hac vice)
Bryan Cave Powell Goldstein LLP
One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Telephone: 404-572-6600
Facsimile: 404-572-6999

Richard G. Salazar
Fowler White Boggs Banker
501 East Kennedy Boulevard
Suite 1700
St. Petersburg, Florida 33602
Telephone: 913-228-7411

                                        Counsel for Defendants Thermal Engineering Construction Services, Inc., Babcock Power Services, Inc., and Theodore Maliszewski

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| SOUTHEASTERN MECHANICAL SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> NORMAN BRODY, JAMES SHEROUSE, KEVIN SMITH, THERMAL ENGINEERING CONSTRUCTION SERVICES, INC. (A/K/A TEI CONSTRUCTION SERVICES, INC.), BABCOCK POWER SERVICES, INC., AND THEODORE MALISZEWSKI, <br><br> Defendants. | CIVIL ACTION FILE <br> NO. 8:08-cv-1151-T-30EAJ |

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **THERMAL ENGINEERING CONSTRUCTION SERVICES, INC.'S MOTION FOR SPOLIATION SANCTIONS AND INCORPORATED MEMORANDUM OF LAW** was served upon counsel of record by electronic service to the following:

>Richard C. McCrea, Esq.
>GREENBERG TRAURIG LLP
>Courthouse Plaza, Suite 100
>625 East Twiggs Street
>Tampa, Florida  33602

17

   David Long-Daniels, Esq.
   GREENBERG TRAURIG LLP
   Suite 400
   3290 Northside Parkway
   Atlanta, Georgia  30327

   Thomas T. Steele, Esq.
   Sarah M. Hammett, Esq.
   Steele Hale, P.A.
   Suite 425
   201 E. Kennedy Boulevard
   Tampa, Florida  33602


This 6th day of March, 2009.

              /s/ Matthew J. Pearce