UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SOUTHEASTERN MECHANICAL
SERVICES, INC.,

      **Plaintiff,**

vs.                                              Case No.: 8:08-CV-1151-T-30EAJ

**NORMAN BRODY, et al.,**

      **Defendants.**
_____/

## ORDER

Before the court are Plaintiff's **Motion to Compel Production of Documents** (Dkt. 316) and Defendant **Thermal Engineering Construction Services, Inc.'s Response to Plaintiff's Motion to Compel Production of Documents** (Dkt. 323).

Plaintiff Southeastern Mechanical Services, Inc. ("SMS") seeks an order compelling the production of documents relating to training presentations Defendant Thermal Engineering Construction Services, Inc. ("TEI") conducted in 2008.[1] Defendant claims such communications are protected by the attorney-client privilege. Plaintiff asserts that Defendant waived any attorney-client privilege relating to the training presentations when it publicly disclosed an affidavit discussing the training program and a handout from a training presentation.

### Background

In the spring of 2008, Babcock Power, Inc. ("Babcock") requested that its outside counsel,

---

[1] Specifically, SMS seeks all documents relating to: (1) any meetings, presentations, or programs given by TEI's outside counsel to any Babcock entity in the past two years, (2) any handouts given to Babcock employees at the presentations, (3) any rosters or lists of names of employees who attended the twenty training sessions, and (4) any calendars or notes showing the dates of the presentations (Dkt. 323, Ex. D).

Bryan Cave Powell Goldstein ("Bryan Cave"), prepare a legal training program to instruct employees of Babcock and its various subsidiaries on the importance of clear and concise communications in their business dealings (Dkt. 323, Ex. A, at ¶ 2). Scott Green ("Green") and Christopher Galanek ("Galanek"), attorneys at Bryan Cave, developed the legal training program (Id. at ¶ 3). During 2008, Green and Galanek presented the training program on twenty occasions to employees of Babcock and its affiliates, including TEI employees (Id. at ¶¶ 4, 7).

On June 6, 2008, SMS sent a demand letter to TEI alleging unauthorized access and use of SMS's confidential and proprietary information (Dkt. 316, Ex.1).

On June 12, 2008, Green and Galanek gave two training presentations to TEI employees in Duncan, South Carolina (Dkt. 323, Ex. A, at ¶ 5).

SMS first learned of the training presentations during the deposition of Defendant Norm Brody ("Brody") on November 12, 2008. Brody testified that Green and Galanek made a presentation regarding the importance of e-mails and "what you put into e-mails" (Dkt. 316, Ex. 2, Brody Depo. at p. 75). Brody stated that the presentation did not address the disputes raised in this case (Id. at p.76). When SMS counsel asked what Brody remembered about the presentation, TEI counsel objected to further questioning on the basis of the attorney-client privilege as to those communications (Id. at pp. 77-78).

On March 30, 2009, SMS filed a motion for spoliation sanctions against Defendants (Dkt. 269) alleging that Defendants should be sanctioned for wiping and deleting information, including e-mails, from the laptops and BlackBerries of Brody, Jimmy Sherouse ("Sherouse"), and Kevin Smith ("Smith") ("Individual Defendants") (Id.). SMS further contended that, as part of Defendants' attempt to hide their spoliation of evidence, Individual Defendants met with Galanek

who later "...instructed Individual Defendants, [Dale] Naughton, and a few other TEI employees regarding the proper use of e-mails and what should not be put in e-mails"  (Dkt. 282 at 3)

In response to SMS's spoliation motion, TEI argued that the training programs conducted by TEI's outside counsel have no relevance to the spoliation issue or to the claims and defenses asserted in this case (Dkt. 292).  To support its position, TEI filed Green's affidavit, which provides the following description of the training program:

> In the spring of 2008, I was asked by our client Babcock Power Inc. to prepare a training program for the purposes of instructing the employees of Babcock Power Inc. and its various subsidiaries on the importance of clear, concise and precise communications in their business dealings.  This training program was an interactive training program in which vignettes were used to demonstrate the importance of clear and precise communications when dealing with customers, vendors, and subcontractors and other employees of the Company, and the difficulties that may be created from vague, ambiguous or confusing communications.

(Dkt. 323, Ex. A, at ¶ 2).  Green states that, during the presentations, neither he nor Galanek had any discussions with Individual Defendants and that the disputes in this case were not discussed with any TEI employees (Id. at ¶ 6).  According to Green's second affidavit, the presentations to TEI employees were scheduled on or before May 1, 2008 (Dkt. 323, Ex. B, at ¶ 3).[2]  The presentations were not in response to SMS's June 6, 2008 demand letter or in response to any of SMS's claims or allegations in this case (Id.).

A handout entitled "Business Communications For The Litigation Wary" was provided at the presentations (Dkt. 323, Ex. A at ¶ 8).  The handout provides that "in all business communications," an employee should "strive to be . . . clear, precise, factual, accurate and professional" (Dkt. 323-2 at 7).  The handout instructs an employee to avoid "ambiguity, emotion,

---

[2] TEI filed a second affidavit by Green in response to SMS's motion to compel (Dkt. 323, Ex. B).

argumentative tone, sarcasm, inaccuracies, finger pointing, and overly self critical comments" in drafting business communications (Id.).  When preparing business communications, the handout advises an employee to consider: (1) the audience for the communication, (2) the recipient and the author of the communication, (3) the marking and identification of the communication, (4) whether counsel should be included or copied on the communication, (5) the retention and maintenance of the communication, (6) whether the communication should be verbal or written, (7) whether the communication is fact or opinion based, and (8) whether the communication involves a current or likely dispute (Id.).

**Discussion**

SMS asserts that TEI waived any attorney-client privilege protection for communications relating to the training presentations conducted by TEI's outside counsel.  Specifically, SMS argues that by filing Green's affidavit and the handout in response to SMS's claims for spoliation sanctions, Defendant waived the privilege relating to such communications.  SMS suggests that TEI is selectively disclosing privileged information to defend against SMS's spoliation claims while insisting upon protection of the privilege relating to those communications.

TEI responds that it provided only a general description of the training presentations to demonstrate that the presentations are irrelevant to this litigation and the spoliation issue.  TEI contends it is not seeking to use the attorney-client privilege as both a "sword" and a "shield." Furthermore, TEI asserts that SMS has failed to demonstrate any prejudice from TEI's nondisclosure of confidential communications.  Finally, TEI argues that SMS's motion should be denied as untimely.

The attorney-client privilege belongs solely to the client and the client may waive it

expressly or implicitly. Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1417 (11th Cir. 1994), cert. denied, 513 U.S. 1110 (1995) (quotations and citations omitted). The doctrine of waiver by implication reflects the position that the attorney-client privilege was intended as a shield, not as a sword. Id. Therefore, a party may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes. Id.

Waiver by implication may occur when a client places the attorney-client relationship directly at issue or when a client asserts reliance on an attorney's advice as an element of a claim or defense. Id. at 1418. A party "waives the privilege if it injects into the case an issue that in fairness requires an examination of otherwise protected communications." Id. at 1419. Although waiver by implication often occurs when a defendant raises an affirmative defense, the defendant need not raise an affirmative defense to inject a new issue into the case. Id. However, "[t]o waive the attorney-client privilege . . . a defendant must do more than merely deny a plaintiff's allegations. The holder must inject a new factual or legal issue into the case." Id.(quoting Lorenz v. Valley Forge Ins., 815 F.2d 1095, 1098 (7th Cir. 1987)); see In re Hillsborough Holdings Corp., 176 B.R. 223, 241 (M.D. Fla. 1994) (merely making allegations in pleadings is insufficient to constitute an "at issue" waiver). Moreover, a waiver of the privilege will generally not be found unless the party attacking the privilege has been prejudiced. Cox, 17 F.3d at 1417-18; Conkling v. Turner, 883 F.2d 431, 434 (5th Cir. 1989) (the attorney-client privilege is waived where a litigant places privileged information in issue for his own benefit and it would be manifestly unfair to the opposing party to allow the privilege to protect against disclosure).

The record does not demonstrate that TEI implicitly waived the attorney-client privilege by filing Green's affidavit and the handout in the public record. These documents do not reveal the

5

substance of any protected communications during the training presentations. Pursuant to Fed. R. Civ. P. 26(b)(5)(ii), Green's affidavit generally describes the purpose, the participants, and the format of the legal training program conducted by TEI's outside counsel. Likewise, the handout contains general principles for drafting business communications.

There is no indication that reliance on advice of counsel is an affirmative defense in this case. Also, Green's affidavit and the handout were offered to show that the training program for TEI employees was planned prior to SMS's June 6, 2008 demand letter and that, during the presentations, TEI's outside counsel did not meet or have any conversations with Individual Defendants or TEI employees regarding the claims and defenses asserted in this case. TEI merely denied SMS's allegation that Individual Defendants attended the training presentations and met with Galanek in an attempt to hide their spoliation of evidence. Although SMS alleges that legal advice provided by TEI's outside counsel on the proper use of e-mail by TEI employees is relevant to discovery requests and this litigation, relevance provides no justification for ignoring the attorney-client privilege. Cox, 17 F.3d at 1418 (courts cannot justify finding a waiver of privileged information simply to provide the opposing party with helpful or relevant information). Accordingly, Plaintiff's **Motion to Compel Production of Documents** (Dkt. 316) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on this 25th day of August , 2009.

_____
ELIZABETH A JENKINS
United States Magistrate Judge