UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SOUTHEASTERN MECHANICAL
SERVICES, INC.,

    **Plaintiff,**

vs.                                                Case No.: 8:08-CV-1151-T-30EAJ

**NORMAN BRODY, et al.,**

    **Defendants.**
_____/

## ORDER

Before the court are **Plaintiff's Motion for Sanctions Due to Spoliation of Evidence and for Order to Show Cause or, in the Alternative, to Amend the Complaint** (Dkt. 269), **Plaintiff's Supplement to its Motion for Sanctions Due to Spoliation of Evidence** (Dkt. 282), **Defendants Theodore Maliszewski's, Thermal Engineering Construction Service's Inc.'s, and Babcock Power Services, Inc.'s Response to Plaintiff's Motion for Sanctions Due to Spoliation of Evidence** (Dkt. 292), **Defendants Norman Brody, Jimmy Sherouse, and Kevin Smith's Opposition to Plaintiff's Motion for Sanctions Due to Spoliation of Evidence** (Dkt. 293), and **Plaintiff's Second Supplement to its Motion for Sanctions Due to Spoliation of Evidence** (Hearing Ex. 1 ).[1] A hearing has been held on the motion.

Southeastern Mechanical Services, Inc. ("SMS") seeks spoliation sanctions asserting that the laptops and BlackBerries issued by Thermal Engineering Construction Services, Inc. ("TEI ") to Defendants Norman Brody ("Brody"), Jimmy Sherouse ("Sherouse"), and Kevin Smith ("Smith")

---

[1] During the hearing, the court granted Plaintiff's unopposed request to supplement the record with depositions of the parties' expert witnesses (Dkt. 324 at 28).

("Individual Defendants") were completely wiped of any data. SMS asserts that Defendants acted in bad faith in destroying crucial evidence that they had a duty to preserve (Dkt. 269 at 8-12).[2] Alternatively, SMS requests an opportunity to amend its Third Amended Complaint to add a cause of action against Babcock Power, Inc. ("BPI")[3] for spoliation of evidence (Id. at 17).

SMS argues that striking Defendants' answer and entering a default judgment is the only sanction that will cure the prejudice caused by Defendants' wrongful actions (Id. at 16). In the alternative, SMS requests a ruling that: (1) Individual Defendants' laptops and BlackBerries contained trade secrets and other confidential information belonging to SMS, (2) the remaining Defendants were aware of this fact, and (3) Defendants used SMS's confidential information to compete with SMS (Id.). At a minimum, SMS asserts that the court should allow it to submit evidence pertaining to Defendants' intentional deletion of evidence and instruct the jury that it may draw an adverse inference against Defendants regarding the destroyed evidence (Id.).[4] SMS also seeks fees and costs incurred in determining whether the evidence was destroyed and in bringing this motion.

---

[2] In addition to seeking spoliation sanctions against Defendants for the destruction of the evidence, SMS argues that Defendants should be held in contempt of the court's June 13, 2008 order because they willfully destroyed key evidence relating to SMS's claims (Dkt. 269 at 6). Although SMS charges Defendants with contempt, there is no detailed argument regarding that issue. Instead, SMS's briefs focus on the charge of spoliation. The standards for contempt and spoliation are different. A finding of civil contempt must be based on "clear and convincing evidence" that a court order was violated. Jove Eng'g, Inc. v. IRS, 92 F.3d 1539, 1545 (11th Cir. 1996). This standard is more exacting than the preponderance of the evidence standard, but does not require proof beyond a reasonable doubt. Id. Accordingly, because SMS has failed to develop fully its contempt argument, this sanction request should be filed as a separate motion.

[3] BPI is a parent company of TEI.

[4] If the court finds that Defendants did not delete the evidence from the computer devices, and that an employee of BPI deleted the information, SMS seeks leave to amend its amended complaint to add a count of spoliation against BPI (Dkt. 269 at 17).

Defendants respond that no evidence has been destroyed because all the data on Individual Defendants' laptops and BlackBerries was preserved on BPI's servers (Dkt. 292 at 1). Even assuming that some e-mails were deleted, Defendants argue that hard copies of those e-mails were produced to SMS from BPI's server and, therefore, it is irrelevant whether any information was deleted from these computer devices (Id. at 7). Because all the data was ultimately produced to SMS, Defendants argue that spoliation sanctions are inappropriate. Furthermore, TEI, Babcock Power Services, Inc., and Theodore Maliszewski ("Corporate Defendants") contend that there is no evidence to demonstrate that they were involved in the alleged intentional destruction of this evidence (Id. at 2).

## I. Factual Background

Sherouse and Smith purchased BlackBerries for use during their employment with TEI and they were reimbursed for the costs of these devices (Dkt. 292, Ex. B ¶ 2, Ex. C ¶ 2). Sherouse purchased his BlackBerry on May 29, 2008 or May 30, 2008 (Dkt. 269, Ex. A, Sherouse Depo. at 81). Smith purchased his BlackBerry no later than May 28, 2009 (Dkt. 282, Ex. C). Brody used his personal BlackBerry during his employment with TEI and was reimbursed for the cost of the BlackBerry (Dkt. 292, Ex. A ¶ 2).[5]

On May 28, 2008, Smith's BlackBerry was added to TEI's BlackBerry Enterprise Server, which activated his TEI e-mail account (Dkt. 282, Ex. C). On May 29, 2008, Brody completed and returned a BlackBerry Wireless Email Access Form to TEI, which activated his TEI e-mail account (Id.).

---

[5] During the hearing on this motion, Brody's counsel confirmed that Brody brought his personal BlackBerry when he started work for TEI (Dkt. 324 at 59).

On June 3 and June 4, 2008, Individual Defendants' BlackBerries were synchronized to their TEI e-mail accounts (Dkt. 292, Ex. D ¶ 7). As a result of the synchronization, "all emails sent or received from the blackberry devices and the individual's TEI email account would also reside on the company's server and be subject to the company's normal backup and archiving process" (Id.).

Smith received his TEI-issued laptop on or about May 29, 2008 (Dkt. 292, Ex. B ¶ 2). Brody and Sherouse were issued laptop computers by TEI on or about June 3, 2008 (Dkt. 292, Ex. A ¶ 2, C ¶ 2). On or about June 4, 2008, the laptops were configured "so that the users' email would reside on the server as opposed to on the hard drive of the individual laptop" (Dkt. 292, Ex. D ¶ 4). The laptops were configured so that "no email files would reside on the individual laptops. Instead, all email files would have been stored and preserved on a company server" (Id. at ¶ 6).

On June 6, 2008, TEI received a copy of SMS's demand letter alleging Defendants' unauthorized access and use of SMS' confidential information and trade secrets (Dkt. 324 at 31). At the request of BPI's legal department, the databases for the TEI e-mails accounts of Brody, Sherouse, and Smith were copied and preserved on or about June 10, 2008 (Dkt. 292, Ex. E ¶ 3).

Pursuant to the court's June 13, 2008 Temporary Restraining Order, Defendants were directed to return all SMS information and property to SMS (Dkt. 11 at 2). Further, the court ordered Defendants to preserve all computer files, data, documents, or similar information on their computers until further notice by the court (Id. at 3). The court also restrained Defendants from destroying any and all information and documents potentially relevant to Plaintiff's claims (Id.).

On June 14, 2008, Sherouse was served a copy of the Temporary Restraining Order (Dkt. 292, Ex. C ¶ 2). On June 16, 2008, Brody and Smith were served copies of the Temporary Restraining Order (Dkt. 292, Ex. A ¶ 2 and B ¶ 2).

4

Individual Defendants were placed on administrative leave on June 17, 2008 after TEI received notice of the lawsuit and the court's Temporary Restraining Order (Dkt. 292, Ex. G, at ¶ 6). Prior to June 17, 2008, Individual Defendants used their laptop computers and/or BlackBerries for e-mail and telephone service. (Dkt. 292, Ex. I; Dkt. 269-2, Ex. A; Dkt. 282, Exs. B and C).

On June 17, 2008, Michael McInerny ("McInerny"), Associate General Counsel of BPI, instructed Individual Defendants to return their laptops and BlackBerries to Robert Barrett ("Barrett"), BPI's Chief Information Officer, by Federal Express (Dkt. 292, Ex. G ¶ 7). Sherouse returned his laptop and BlackBerry to Barrett on June 16, 2008 (Dkt. 292, Ex. C ¶ 2). Brody and Smith returned their computer devices to Barrett on June 17, 2008 (Dkt. 292, Ex. A and B).

Also on June 17, 2008, the TEI e-mail accounts of Individual Defendants were frozen and their passwords were locked, preventing their access to BPI's system (Dkt. 292, Ex. E, ¶¶ 4 and 5). All the data in Individual Defendants' e-mail folders was backed up and copied on that same day (Id. at ¶ 5). The copies of the e-mail folders contained the Individual Defendants' entire e-mail folders with respect to their TEI e-mail accounts (Id.). Once Individual Defendants were locked out of the system as of June 17, 2008, they could neither send nor receive e-mails from or to their TEI e-mail addresses using their laptops and BlackBerries (Id.).

Barrett noted that all e-mails sent from or received by the BlackBerries, "once synchronized" with TEI's Lotus Notes e-mail application, were stored on the company server (Id. at ¶11). Furthermore, e-mails sent from or received by Individual Defendants from their laptops were stored and preserved on the company server (Id. at ¶ 12).[6]

---

[6] Defendants produced hard copies of the e-mails and documents sent or received from Individual Defendants laptops and BlackBerries that were stored on the company's server (Dkt. 292, Ex. I). These documents are relevant to Plaintiff's claims.

5

On or about June 19, 2008, Barrett received Individual Defendants' laptops and BlackBerries. (Dkt. 292, Ex. E, ¶¶ 6-8). Barrett stored the laptops and BlackBerries in a locked cabinet until they were packaged and delivered to Esquire Litigation Services ("ELS") for a forensic examination (Dkt. 292, Ex. E, ¶¶ 9-13). Thereafter, ELS gave the computer equipment to SMS's forensic computer expert, Jon Kessler ("Kessler") (Dkt 269-3, Ex. B).

Kessler performed a forensic examination of Individual Defendants' laptops and BlackBerries (Dkt. 269, Ex. B). Kessler determined the laptops did not contain any e-mail files (Dkt. 269, Ex. B at 9). In reference to the BlackBerries, Kessler concluded that the devices contained no data, including e-mails, text messages, calendar items, telephone records, contacts, attachments, or applications (Id. at 8; Hearing Ex. 1, Kessler Depo. at 169).[7] Kessler opined that the information stored on the BlackBerries was not manually deleted (Dkt. 269, Ex. B at 9). Kessler testified that the BlackBerries "were not consistent with the never-used state, and they were not consistent with the only used for phone calls state" (Hearing Ex. 1, Kessler Depo. at 166).[8]

Kessler opined there were two possible explanations for the lack of data on the BlackBerries: (1) the user performed a data "wipe" or "hard reset" or (2) the user entered an incorrect password ten consecutive times (Dkt. 269, Ex. B at 9; Hearing Ex. 1, Kessler Depo. at 197). A data "wipe"

---

[7] Kessler testified that memory images of the BlackBerries were created using Paraben Device Seizure software (Hearing Ex. 1, Kessler Depo. at 130). The process used to create the memory images ensured that the data on the BlackBerries was not contaminated or altered (Id. at 53-54). The Paraben software creates a complete forensic image of a BlackBerry, including lists of telephone calls, text messages, calendar items, e-mails, contact lists, memos, applications, and deleted items (Hearing Ex. 1, Kessler Depo. at 52-54).

[8] In layman's terms, Kessler apparently meant that the data on Individual Defendants' BlackBerries was different from the data found on a new Blackberry acquired from the factory and different from a Blackberry used only for telephone calls (Hearing Ex. 1, Kessler Depo. at 66-68, 166).

or "hard reset" requires a user to enter the "security options" menu and select "Wipe Handheld" (Hearing Ex. 1, Kessler Depo. at 88). To accomplish a bad password reset, the user must enter the BlackBerry password incorrectly ten times (Id.). With each consecutive invalid password input, the user must enter the word "BlackBerry" and, at the prompt, confirm that the BlackBerry will be wiped (Id). Kessler stated it would be very difficult to accidently wipe a BlackBerry of data (Id.).

TEI's forensic expert, Lacey Walker ("Walker"), also examined the three laptops and BlackBerries belonging to Individual Defendants. Walker concluded that he would not expect to see e-mail files residing on the laptops because the users' e-mail was setup to reside on the server (Dkt. 292, Ex. F ¶ 9).

Walker's examination did not reveal any data on Individual Defendants' BlackBerries (Hearing Ex. 1, Walker Depo. at 74-75). However, Walker determined that each of the devices contained a Subscriber Identity Module, or "SIM" card (Dkt. 292, Ex. F ¶ 10). A "SIM" card contains information about a phone's service and can also contain information such as text messages and address contacts (Id.). SIM cards do not, however, contain any records of e-mails (Hearing Ex. 1, Walker Depo. at 142). On Brody's BlackBerry, the SIM card contained 208 contacts and five text messages (Hearing Ex. 1, Walker Depo. at 298-300). The text messages dated from May 22, 2007 to January 28, 2008 (Id. at 299). On Smith's BlackBerry, the SIM card contained 66 contacts and no text messages (Id. at 13-15, 298-300). The SIM card on Sherouse's BlackBerry contained neither contacts nor text messages (Id. at 13).

Walker agreed with Kessler's determination that the BlackBerries could have been wiped of data by either initiating a "hard reset" wipe or a bad password reset (Dkt. 292, Ex. F ¶ 11). In addition, Walker hypothesized two other possible explanations for the lack of e-mails on the

7

BlackBerries: (1) a remote wipe initiated from the BlackBerry server by the third-party administrator and (2) an inadvertent deletion by Kessler during his examination of these devices (Id.).[9] Walker testified that a "hard reset" wipe, a bad password reset, and a remote wipe would result from intentional actions (Hearing Ex. 1, Walker Depo. at 265-69).

## II. Discussion

Spoliation is the intentional destruction of evidence or the significant and meaningful alteration of a document or instrument. Green Leaf Nursery v. E.I. DuPont de Nemours & Co., 341 F. 3d 1292, 1308 (11th Cir. 2003). Federal law governs the imposition of sanctions for spoliation of evidence because spoliation sanctions constitute an evidentiary matter. Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005).

Although federal law controls spoliation sanctions, the Eleventh Circuit has not set forth specific guidelines on the imposition of such sanctions. Thus, courts may look to state law principles for guidance so long as the principles are consistent with federal spoliation principles. Id. Under Florida law, spoliation is established when the party seeking sanctions proves that: (1) the evidence existed at one time, (2) the alleged spoliator had a duty to preserve the evidence, and (3) the evidence was crucial to the movant's prima facie case or defense. Golden Yachts, Inc. v. Hall, 920 So. 2d 777, 781 (Fla. 4th DCA 2006). In addition to these factors, sanctions for spoliation are appropriate only when there is evidence of bad faith and lesser sanctions will not suffice. Flury, 427 F.3d at 944 (spoliation sanction of dismissal requires showing of bad faith). Mere negligence

---

[9] In his deposition, Kessler agreed that the third-party administrator of the BlackBerry server could perform a remote wipe and delete information from the device (Hearing Ex.1, Kessler Depo. at 232-34). Kessler denied that he manipulated or imported any information to the forensic images of Individual Defendants' BlackBerries (Hearing Ex.1, Kessler Depo. at 184).

in losing or destroying records is not enough for an adverse inference instruction. Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997) (adverse inference from party's failure to preserve evidence must be predicated on bad faith).

Here, it is clear that evidence existed at one time and that there was a duty to produce this evidence. It is undisputed that Individual Defendants used their laptops and BlackBerries and that no e-mails, call logs, or calendar items from these devices were produced. For instance, the TEI e-mail accounts for Smith and Brody were activated on their BlackBerries on May 18, 2008 and May 29, 2008. However, Individual Defendants' TEI e-mail accounts were not synchronized with the company server until June 3 and June 4, 2008. Also, telephone records, text messages, and calendar items were deleted from Individual Defendants' BlackBerries. Defendants concede that they had a duty to preserve data on these computer devices. Accordingly, the disputed issues are whether Defendants destroyed crucial evidence and whether Defendants acted in bad faith in destroying crucial evidence.

In spoliation cases, courts must not hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence because doing so allows the spoliators to profit from the destruction of evidence. Kronisch v. United States, 150 F.3d 112, 128 (2d Cir. 1998). However, it should not be inferred that missing evidence was unfavorable unless the circumstances surrounding the evidence's absence indicate bad faith. Bashir, 119 F.3d at 931 (court "will not infer that the missing speed tape contained evidence unfavorable to appellees unless circumstances surrounding the tape's absence indicate bad faith, e.g., that appellees tampered with the evidence"); see also Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 109 (2d Cir. 2002) (bad faith alone is sufficient circumstantial evidence from which a fact finder can

conclude that missing evidence was unfavorable to the spoliator). The substantial and complete nature of the destruction of evidence by the spoliator justifies a finding that the destroyed evidence prejudiced a plaintiff. E*Trade Sec., LLC v. Deutsche Bank AG, 230 F.R.D. 582, 592 (D. Minn. 2005); see also In re Krause, 367 B.R. 740, 749 (Bankr. D. Kan. 2007) (spoliation found where debtor used security program to permanently wipe or purge files on hard drive after court ordered him to turn over computer).

In this case, the circumstances surrounding the destruction of data from Individual BlackBerries indicate bad faith.[10] The Individual Defendants had both the motive and the opportunity to wipe the BlackBerries of data. Despite the denials by Individual Defendants that they deleted any information, e-mails, text messages, call logs, or memory from their BlackBerries, their assertions are not credible. The forensic computer experts agree that three of the four possible explanations for the "wiped" state of the BlackBerries can only be attributed to deliberate and intentional actions. TEI's suggestion that SMS's expert could have inadvertently deleted the data is not plausible. Kessler testified that he used appropriate procedures and software to prevent any contamination of the BlackBerries.

The wiping of all e-mails, calendar items, text messages, and telephone records from the BlackBerries further supports a finding that SMS was prejudiced by the destruction of this evidence. Although Individual Defendants' BlackBerries were activated in late May 2008 and were used during the first few weeks of their employment, there were no e-mails, calendar entries, text

---

[10] In reference to the absence of e-mails on Individual Defendants' laptops, there is a reasonable explanation for the lack of e-mails sent or received from the Individual Defendants' TEI e-mail accounts. The laptops were configured so that the e-mails from the user's TEI e-mail accounts would reside on the server as opposed to the hard drive of the laptop. SMS concedes this point.

10

messages, or telephone records on their BlackBerries. SMS's expert stated that the configuration of data on Individual Defendants' BlackBerries was not similar to that of a new BlackBerry acquired from the factory or a BlackBerry that had been used exclusively for telephone calls. Given the fact that Individual Defendants frequently used their BlackBerries, it is improbable that there was no data on the BlackBerries reflecting communications between Individual Defendants and TEI employees, Babcock employees, current customers, or potential customers. Likewise, it is suspicious that there are no e-mails, text messages, calendar entries, or records of telephone calls from Smith to Brody or Sherouse on the BlackBerries, despite the fact that Brody and Sherouse reported to Smith.

The lack of e-mail on Brody's BlackBerry is especially troubling. Indeed, Brody testified that he used his BlackBerry for sending and receiving e-mails at TEI for approximately a month.[11] When asked if he had any other source of communication with TEI other than his BlackBerry, Brody answered no. Brody brought with him to TEI his Blackberry containing text messages dating back to May 22, 2007 and 208 contacts. In fact, on May 20, 2008, while still employed by SMS, Brody sent an e-mail from his BlackBerry using his personal e-mail account to confirm his employment with TEI. Despite Brody's use of his personal BlackBerry for over a year, there are no e-mails, text messages, calendar entries, or call logs on this device.[12]

Moreover, this is not the first instance of the deletion of data from computers used by Brody and Sherouse. In connection with the preliminary injunction motion, the court found that Brody's

---

[11] In his affidavit, Brody states that he did not send or receive e-mails on his BlackBerry using his TEI e-mail account (Dkt. 292, Ex. A, ¶ 2). However, as the hard copies of the e-mails reveal, Brody, Sherouse, and Smith also had personal and Babcock Power e-mail accounts (Dkt. 292, Ex. I).

[12] Although the SIM card on Brody's BlackBerry contained five text messages dating from May 2007 to January 2008, there were no text messages on Brody's BlackBerry.

11

explanation for the deletion of all of his e-mails and address book files from his SMS computer was not credible (Dkt. 87 at 13, n. 9). Similarly, Sherouse used a software program to remove all data from his SMS laptop before returning it to SMS. Sherouse's testimony that he permanently deleted all information from his laptop because there were personal files on the computer was not credible (Id. at 13, n. 10).

Defendants assert that any e-mails deleted on the BlackBerries were synchronized with the company's server and were produced to SMS. However, the BlackBerries of Smith and Brody were activated on May 28, 2008 and May 29, 2009 but were not synchronized with the company server until June 3 and June 4, 2008. Thus, for six or seven days, all e-mails Smith and Brody sent or received using their TEI e-mail accounts were not saved on to the company server (unless another TEI or Babcock employee was copied on the e-mail).

The hard copies of e-mails produced by Defendants reveal that Individual Defendants used their personal e-mails accounts to communicate with TEI and Babcock employees. Such e-mails would not be stored on to the company's server. In addition, text messages, calendar items, and call logs on the BlackBerries were not saved on the company's server and produced to SMS. As to BlackBerries of Smith and Sherouse, any e-mails from personal e-mail accounts saved on the BlackBerries, text messages, calendar items, or call logs during a period of approximately three weeks (i.e., from the date of purchase of the BlackBerries in late May 2008 through the date they returned the BlackBerries to TEI on June 16, 2008 and June 17, 2008) were wiped. Because Brody used his personal BlackBerry while employed at both SMS and TEI, the wiping of his BlackBerry may have deleted more than three weeks of relevant data. Brody interviewed with SMS on February 10, 2008 (Dkt. 87 at 7, ¶ 22) and while he was still working for SMS, he secretly negotiated with

Defendants to start a new competitive business (Dkt. 87 at 19). Accordingly, when Brody's BlackBerry was wiped, any saved e-mails from his personal e-mail account, telephone records, text messages, and calendar entries dating from February 2008 to June 17, 2008 on his BlackBerry were deleted. Thus, the circumstances justify a finding that the missing evidence would have been unfavorable to Individual Defendants.[13]

## III. Sanctions

A district court has "broad discretion" to impose sanctions. Flury, 427 F.3d at 944. Sanctions for spoliation of evidence "are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." Id. Because dismissal represents the most severe sanction available, it should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice. Id.

As a result of the wiping of Individual Defendants' BlackBerries, spoliation sanctions against Individual Defendants are warranted. Although SMS seeks sanctions in the form of a default judgment against Defendants, a lesser sanction – an adverse inference instruction – is the most appropriate sanction based on the present record. Therefore, subject to the trial court's discretion, SMS is entitled to an appropriate adverse inference jury instruction regarding Individual Defendants' failure to preserve data on their BlackBerries that would have been advantageous to SMS and disadvantageous to Individual Defendants.

---

[13] Because spoliation is an act of concealment and deception, it can be difficult to determine all of the facts related to the destruction of evidence, including the identity of the spoliator. However, their possession of the devices, coupled with the delay in turning them over to TEI after receipt of service of the Temporary Restraining Order, gave the Individual Defendants the opportunity to erase data. The court finds that Individual Defendants were responsible for the intentional wiping of the BlackBerries. The record is insufficient to demonstrate that either Corporate Defendants or BPI directed or condoned Individual Defendants' conduct.

Accordingly, and upon consideration, it is **ORDERED and ADJUDGED** that:

(1) **Plaintiff's Motion for Sanctions Due to Spoliation of Evidence and for Order to Show Cause or, in the Alternative, to Amend the Complaint** (Dkt. 269) is **GRANTED IN PART and DENIED IN PART** as set forth above.

**DONE AND ORDERED** in Tampa, Florida on this 31st day of August 2009.

_____
ELIZABETH A JENKINS
United States Magistrate Judge